

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

FILED
Mar 06, 2025
03:00 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

| | | |
|---|---|---|
| Shalanda White | ) | Docket No. 2021-08-1065 |
| | ) | |
| v. | ) | State File No. 2571-2021 |
| | ) | |
| Federal Express Corp., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard January 21, 2025 |
| Compensation Claims | ) | in Jackson, TN |
| Shaterra R. Marion, Judge | ) | |

---

### Reversed and Remanded

---

In this compensation appeal, the employee argues the trial court erred in determining she did not give sufficient notice of her alleged gradual injury. Prior to reporting a work-related injury, the employee had suffered from pain in both knees for a period of time and had received medical treatment on her own. After reporting to her physician that she had suffered an increase in symptoms while at work, her physician referred her to a specialist. After attending several appointments with a specialist and undergoing objective testing, the specialist reviewed the results of the objective testing with the employee and recommended surgery in both knees. The employee then gave written notice of her injury to her manager. The employer initially denied the claim based on a lack of evidence of medical causation. It later raised a notice defense, contending the employee knew or should have known she had a work-related injury causing permanent physical impairment more than fifteen days before she provided written notice. After a trial, the court found the employee knew or should have known she had a work-related cumulative trauma injury more than fifteen days prior to her written notice of injury and was therefore barred from receiving compensation. The employee has appealed. Upon careful consideration of the record and arguments of counsel, we reverse the trial court's decision and remand the case.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Christopher L. Taylor, Memphis, Tennessee, for the employee-appellant, Shalanda White

Stephen P. Miller and Joseph B. Baker, Memphis, Tennessee, for the employer-appellee, Federal Express Corp.

**Factual and Procedural History**

Shalanda White ("Employee") began working part-time for Federal Express Corp. ("Employer") in December 2004 as a package handler. Eventually, she became a full-time team leader on offload. Employee described her job duties in this position as follows: "I was on a bed of rollers, pushing and pulling containers, 3,000 pounds plus, with one other employee at that particular time. I was pushing freight uphill. . . . And I was on my knees in the plane, maneuvering freight and loading up to 2,000 pounds."

On October 20, 2020, Employee had a telehealth visit with her family physician, Dr. Lyle G. Bohlman, with complaints of ankle pain and swelling and pain in her right knee. Employee provided a history of a swollen knee "x 3 days" and "states [she] was exercising when it started swelling and hurting." Employee indicated she had "some ankle pain and some [r]ight knee pain when [she] got off work [and] she had a swollen knee since yesterday." She denied having suffered any known injury, and Dr. Bohlman noted Employee had "known [degenerative joint disease ("DJD")] and considerable weight load in the knee." Dr. Bohlman diagnosed Employee with primary osteoarthritis of the right knee, stating it was due to "probable overuse with knee DJD flare" and prescribed an anti-inflammatory.

Employee returned to Dr. Bohlman on November 2, 2020, stating she still had "right knee swelling with sharp pain located behind the right knee" and "now her left knee is swollen." She indicated her knee pain "has not improved much" but was better with rest, ice, and elevation. Employee also stated the pain "reoccurred at work" and noted the pain was now in both knees. Dr. Bohlman reiterated his diagnosis of osteoarthritis in the right knee, prescribed a steroid, and referred Employee to an orthopedist. He did not assign work restrictions at either appointment.

On November 9, 2020, Employee saw Physician's Assistant Sarah Hill at OrthoSouth.[1] At that time, Employee reported a long history of knee pain in the left knee and pain in the right knee for "about a month." She stated she had been "doing a lot of walking and thinks that this probably flared it up." Ms. Hill obtained X-rays of both knees, which indicated "extensive medial and patellofemoral compartment arthritis with bone on bone contact" in the left knee and "mild patellofemoral arthritis" in the right knee. Ms. Hill diagnosed unilateral primary osteoarthritis in the left knee and joint effusion in the right knee, stating, "We have gone over the natural history of arthritis of the knee and have explained to them that this is not a systemic disease and is typically related to overuse and just advanced age. . . ." Ms. Hill went on to state there "are many causes of effusion of the knee. Some of the more common causes include osteoarthritis, bursitis, or infection." She noted that the history of the joint effusion depends on the underlying cause of fluid

---

[1] In its compensation order, the trial court inadvertently stated it was Dr. Bohlman who "detailed [Employee's] cumulative issues" and "ordered x-rays" on November 9 rather than Ms. Hill at OrthoSouth.

accumulation, observing that for some, "effusions can be recurrent whereas for others an effusion may occur once in response to an isolated trauma." Ms. Hill discussed treatment options, including medications, injections, physical therapy and, in the case of the left knee, a possible total knee replacement. She also noted that "[f]or those with advanced arthritic disease causing the effusion, surgery may be required to correct the problem." Employee elected to receive an injection in the left knee and aspiration of and an injection in the right knee, and Ms. Hill released Employee with instructions to "rest" for a week and return if there was no improvement in a few weeks.

On November 23, 2020, Employee returned to OrthoSouth with continued complaints of knee pain and saw Dr. Timothy Krahn. Dr. Krahn agreed with Ms. Hill that Employee suffered from primary osteoarthritis of the left knee, but, in the impression portion of the medical note, he listed an "acute meniscal tear in the right knee" and stated, "[t]he meniscus can become torn through sporting activities or can be associated with the degenerative aging process." Dr. Krahn provided numerous possible treatment options including medications, injections, and a possible knee replacement for the left knee and referred Employee for an MRI of the right knee to confirm the presence of a meniscal tear. Employee opted for a series of injections in the left knee.

The right knee MRI took place on November 30, 2020. Employee attended a telehealth visit with her primary care physician, Dr. Bohlman, on December 7, 2020, at which she told him that she had an appointment at OrthoSouth to go over her MRI results the following week and that the injections had provided minimal relief. Employee indicated she "continue[d] to have swelling and pain with limited [range of motion] of the knees and [an] inability to stand for hours at a time." Dr. Bohlman diagnosed Employee with primary osteoarthritis of both knees and wrote a work restriction of "limited ability to stand for more than [two] hours the next [two] months."

On December 14, 2020, Employee saw Ms. Hill to review her MRI results. Ms. Hill advised the MRI did reveal a complex tear of the right medial meniscus. On December 18, 2020, four days later, Employee sent an email to her supervisor, Londell Owens, stating:

> This is an official notification of injury . . . Approximate date of injury is 11/02/2020. Injuries sustained are Left Knee "Bone on Bone" injury and Right Knee "Torn Meniscus." Injuries sustained by on the Job cumulative Trauma and Repetitive Motion.

Employer initially denied the claim in February 2021 due to a "lack of medical evidence to support a work [-] related injury." The next month, Employee began treating on her own with Dr. Rommel Childress, an orthopedic physician. Dr. Childress recommended an arthroscopy of the right knee but was hesitant to perform a knee replacement on the left knee due to Employee's young age. Employee complained of

3

multiple falls and was using a cane for balance. Thereafter, Employee's knee treatment stagnated for a time as she recovered from a triple heart bypass, but Dr. Childress indicated she still could not work due to her knees as of September 21, 2021.

Employee filed a petition for benefit determination on October 29, 2021. She alleged a cumulative trauma injury due to repetitive motion with a date of injury of November 2, 2020. On April 14, 2022, Dr. Childress wrote a letter to Employee's attorney in which he opined, to a reasonable degree of medical certainty, that Employee's

> occupational exposure is greater than fifty one percent (51%), the cause and source of her progressive arthritis symptoms with her right and left knee, which prevents her from work and functioning and which will more likely than not, need surgical intervention in the future, if her medical condition allows.[2]

Employer sent Employee for a medical evaluation with Dr. Jeffrey Dlabach in May 2022. Dr. Dlabach opined Employee's obesity was the primary cause of her osteoarthritis and that her work activities did not contribute more than fifty percent to her bilateral knee condition. The parties then proceeded to mediation, which was unsuccessful, and Employer specifically raised insufficient notice as a defense on the dispute certification notice issued in October 2022. The parties deposed Drs. Dlabach and Childress, and the case was tried on July 16, 2024.[3] Employee testified on her own behalf, and Employer presented testimony from David Kirby regarding Employee's job duties as a team leader.[4]

At trial, Employee testified that, on November 2, 2020, she was stepping off a piece of equipment known as an outrigger when she began to feel heaviness and burning in her knees. Employee explained,

---

[2] This same correspondence referenced an "episode documented in November 2020, where [Employee] had sudden severe pain in her right knee, which caused her to fall backwards, sustaining a mild concussion." There is no other evidence or testimony in the record indicating Employee suffered a fall or a concussion on November 2, 2020, and Dr. Childress was not asked about this portion of the letter at the time of his deposition. Furthermore, the court made no finding of fact regarding a fall or a concussion, and the attorneys agreed at oral argument that the employee's claim for benefits was based on an alleged gradual injury, not any sudden, traumatic event. As such, we need not determine whether such an incident as described in Dr. Childress's November 2, 2020 correspondence occurred, whether it constituted an injury by accident as defined by Tennessee Code Annotated section 50-6-102(12) (2024), whether Employee failed to give timely notice of it, or whether it was the primary cause of the need for medical treatment. Simply put, that is not the incident on which Employee's claim is based.

[3] We forego a discussion of the expert medical proof in the case, as this appeal concerns only the asserted notice defense.

[4] We also forego a discussion of Mr. Kirby's testimony, as it was relevant only to the issue of causation, which we do not address in this opinion.

4

One of the heavy machineries has a bed, it's called an outrigger. Nothing but rollers. It's there to assist with the containers transitioning from the loader to the outrigger. They don't always work. So . . . I was stepping off that, which is about . . . 1 to 2 feet . . . stepping down. And when I got down in the midst of my second step, my knees just – and I – caught myself. They just . . . seemed really heavy, and were burning, and . . . I felt the heaviness. And I took a couple of steps into . . . I felt the swelling and the burn, and I just – I couldn't move. So one of the employees helped me over to the people mover. That's the – the vehicle that the entire team rides on . . . .

She testified she told her supervisor, Mr. Owens, that her knees were swollen and burning and that she needed to leave. According to her testimony, Mr. Owens told her she was not authorized to leave and to finish the job. She admitted she did not tell Mr. Owens of any specific incident at work at that time and did not suggest her knee condition was work-related. Counsel for Employer elicited testimony from Employee during cross-examination acknowledging that, although she testified in her deposition to experiencing pain and swelling in her knees while at work on November 2, 2020, she did not describe any specific moment when she noticed an increase in her pain on that date, such as when she stepped off the outrigger.

Employee testified she completed her shift and then had a telehealth visit with Dr. Bohlman that day. The report from that appointment does not reflect that she reported any specific incident occurring at work that day. She testified he referred her to OrthoSouth, and she continued to work for Employer during that time without any specific work restrictions. In regard to reporting her potential workers' compensation claim, the following exchange occurred on cross-examination:

Q:    When was the initial [notice to Mr. Owens]?

A:    When I told him Dr. Bohlman took me off work and I said, Londell, I need to file a workman's [sic] comp claim. He said let's wait and see what the results are, the test results.

Q:    So when was that?

A:    That was in, I want to say late November, December. And when I got the results back, that's when I contacted him again [and asked], "did you file the workman's [sic] comp?" And he hadn't, and that's why [the December 18 email] took place.

Neither counsel elicited testimony from Employee at trial as to when or why she came to believe her bilateral knee condition was work-related or when she believed she had suffered some degree of permanent physical impairment in her knees.

5

In a July 24, 2024 compensation order, the trial court determined Employee had failed to provide sufficient notice of her injuries and had offered no reasonable excuse for her delay pursuant to Tennessee Code Annotated section 50-6-201(b). In particular, the court determined that "on November 9, the doctor ordered x-rays and told [Employee] that her symptoms were related to overuse and aging. Thus, as of November 9, [Employee] knew or should have known that she suffered cumulative trauma to her knees due to overuse at work." As such, it denied Employee's claim for medical and permanent disability benefits. The court also determined that its ruling on Employer's notice defense pretermitted the issue of medical causation and chose not to make alternative findings to address that issue. Employee has appealed.

## Standard of Review

The standard we apply in reviewing the trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2024). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Moreover, the interpretation and application of statutes and regulations are questions of law that are reviewed de novo with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2024).

## Analysis

The only issue on appeal is whether the trial court erred in finding Employee failed to give sufficient notice of her alleged work-related gradual injuries. Employee contends her notice to Employer was timely, as she gave written notice four days after discussing her MRI results with her provider and learning she had permanent injuries. For its part, Employer contends she should have known she had a permanent, work-related condition as early as November 2, when she suffered an increase in pain and swelling after stepping off an outrigger at work, or by November 9, when she was told her condition was related to "overuse" and that she might need a knee replacement in the future. Employer asserts it did not receive notice of her alleged injuries until thirty-nine days later on December 18, 2020, when Employee sent her supervisor the email referenced above identifying November 2, 2020 as the date of her alleged injury.

6

*Notice Requirement*

With respect to the provision of timely notice in gradual injury cases, Tennessee Code Annotated section 50-6-201(b) provides:

> In those cases where the injuries occur as a result of gradual or cumulative trauma, then the injured employee or the injured employee's representative shall provide notice of the injury to the employer within fifteen (15) days after the employee:
>
> (1) Knows or reasonably should know that the employee has suffered a work-related injury that has resulted in a permanent physical impairment; *or*
>
> (2) Is rendered unable to continue to perform the employee's normal work activities as a result of work-related injury and the employee knows or should know that the injury was caused by work-related activities.

(Emphasis added.) We previously analyzed this portion of the statute and the resulting case law extensively in *Ernstes v. Printpack, Inc.*, No. 2020-07-0617, 2023 TN Wrk. Comp. App. Bd. LEXIS 25 (Tenn. Workers' Comp. App. Bd. June 6, 2023) ("*Ernstes II*"), *aff'd Ernstes v. Printpack, Inc.*, No. W2023-00863-SC-R3-W3, 2024 Tenn. LEXIS 1 (Tenn. Workers' Comp. Panel Jan. 2, 2024). By way of background, the employee in *Ernstes* filed a petition for benefit determination on November 17, 2020, seeking benefits for permanent hearing loss due to noise exposure at her place of work after learning she had a permanent hearing loss at a medical evaluation in 2019. *Id.* at *4-5. She had not worked for the employer since 2016. *Id.* at *3. At trial, after confirming that she had undergone hearing screenings at work and had been told she suffered hearing loss, Ms. Ernstes acknowledged on cross-examination that, after undergoing hearing tests at work, she believed "all the loud noises and everything" at work was likely the cause of her hearing loss. *Ernstes v. Printpak, Inc.*, No. 2020-07-0617, 2022 TN Wrk. Comp. App. Bd. LEXIS 44, at *12-13 (Tenn. Workers' Comp. App. Bd. Dec. 15, 2022) ("*Ernstes I*"). The trial court in *Ernstes I* determined Employee had provided timely notice of her condition, reasoning that although the employee knew she had hearing loss, she did not know it was related to work until a meeting with her attorney in 2020, thus suspending the notice requirement. *Id.* On appeal, we reversed, concluding that the employee admitted knowing her hearing loss was work-related in 2019 at the latest, and we remanded the case for the trial court to determine whether the employee had offered a reasonable excuse for her delay in giving notice. *Id.* at *14. On remand, the trial court determined that the employee had no reasonable excuse for her delayed notice but that the employer had not shown any prejudice caused by that delay and, consequently, awarded benefits. *Ernstes II*, at *6-7. The employer appealed that order, and, after an exhaustive review of the history of the

notice requirement, we determined that, in cases where an employer alleges improper notice, the employee bears the burden of establishing proper written notice, the employer's actual knowledge of the injury, or a reasonable excuse for the failure to provide proper notice. The employer only has the burden of proving prejudice when it alleges a defect in the written notice itself. *Id.* at *35-36. As such, we set out the following framework for analyzing whether proper notice has been provided:

A. Did the employee provide timely written notice of the alleged work-related injury?

B. If no timely written notice was provided, did the employer have "actual knowledge" of the alleged work-related accident or injury?

C. If no timely written notice was provided and no actual knowledge has been proven, did the employee show a "reasonable excuse" for the failure to give proper notice to the employer  In considering whether the employee has shown by a preponderance of the evidence a reasonable excuse, a court can consider, among other things: (1) the employer's actual knowledge of the employee's injury, (2) lack of prejudice to the employer by an excusal of the notice requirement, and (3) the excuse or inability of the employee to timely notify the employer. However, as previously stated by the Tennessee Supreme Court, "[l]ack of prejudice alone would not be sufficient to excuse notice."

D. If the court determines that: (1) no timely written notice was provided; (2) the employer did not have actual knowledge of the alleged accident or injury; and (3) the employee did not prove a reasonable excuse for the failure to give timely notice, the claim should be denied and dismissed.

E. If written notice was provided, but the employer affirmatively asserts there was a defect or inaccuracy in the notice, the burden of proof shifts to the employer to prove actual prejudice it suffered as a result of the defective or inaccurate notice and, if such prejudice is found, the trial court can fashion a remedy, if appropriate, "only to the extent of the prejudice."

*Ernstes II*, at *34 (citations omitted).

The trial court in the present case, relying on this analytical framework, determined Employee knew or reasonably should have known her knee injuries were work-related as of November 9, and she provided no reasonable excuse for her failure to give written notice until December 18, more than fifteen days later. We conclude, however, that there are key factual differences in the present case that impact the analysis as discussed in *Ernstes*.

First, the employee in *Ernstes* admitted under oath that she believed her hearing loss was work-related, at the latest, in 2019 but did not report a work-related injury until the end of 2020. *Ernstes I*, at \*12-13. In the instant case, Employee did not testify as to when she first believed her bilateral knee conditions were work-related, and Employer offered no other evidence as to when Employee believed her knee conditions were both work-related *and* had caused permanent physical impairment. Second, the employee in *Ernstes* had retired in 2016 but did not provide notice of her alleged work-related hearing loss until late 2020. *Id.* at \*3-4. In the present case, Employee continued working after feeling the increase in pain in early November and was not assigned any work restrictions related to her knees until December 7.[5] Third, causation was not disputed in *Ernstes*; the parties agreed her hearing loss was primarily caused by noise exposure at work. *Id.* at \*3, n.1. In this case, the primary cause of Employee's condition is and has been disputed since the inception of the claim. Finally, the employee in *Ernstes* no longer worked for her employer and was never restricted from working or deemed unable to perform her work activities as a result of her hearing loss. *Id.* at \*3. As such, subsection 201(b)(2) was not pertinent to the analysis in *Ernstes,* and that case could *only* be analyzed pursuant to subsection 201(b)(1), which requires an employee to provide notice within fifteen days of when he or she knows or reasonably should know of a work-related injury that has resulted in a permanent impairment.

In the case at hand, on December 7, 2020, Employee was assigned work restrictions due to her knee conditions that prevented her from working in her position as a team leader. Thus, *both* subsections 201(b)(1) and (2) must be considered, and the employee need only satisfy one or the other to establish proper notice. *See Hicks v. Travelers Ins. Co.*, No. W2003-00768-WCM-CV, 2004 Tenn. LEXIS 324, at \*5-7 (Tenn. Workers' Comp. Panel Apr. 7, 2004) (analyzing proper notice under both subsections and determining it was properly given when the employee began having issues with numbness and tingling in his hands in 1995 but did not know the condition was permanent and was not taken out of work until 2001). Consequently, in notice cases where work restrictions have impacted an employee's ability to "perform the employee's normal work activities," a trial court must consider: (1) at what point in time the employee knew or reasonably should have known he or she suffered from a work-related condition *causing permanent physical impairment*; or (2) at what point in time the employee was unable to engage in or was restricted from normal work activities due to a work-related condition.

With respect to subsection 201(b)(1), the statute requires the trial court to determine when Employee knew or reasonably should have known she had an injury resulting in a

---

[5] At oral argument, the parties agreed that the record was unclear with respect to when Employee's last day worked was, but the earliest work restriction appearing in the record is in Dr. Bohlman's December 7 office note. There is no evidence in the record that Employee missed any work when Ms. Hill told her to "rest" at her November 9, 2020 appointment at OrthoSouth. Furthermore, Dr. Dlabach's evaluation states Employee worked until December 7, and the first report of work injury says Employee's last day was December 15, 2020.

9

*permanent* physical impairment.  Gradual injury cases almost always present close factual questions regarding when the employee knew or reasonably should have known a gradually occurring injury was work-related.  *Hill v. Whirlpool Corp.*, No. M2011-01291-WC-R3-WC, 2012 Tenn. LEXIS 306, at *11 (Tenn. Workers' Comp. Panel May 12, 2012).  The trial court in the present case determined that Employee knew or reasonably should have known she had work-related injuries to her knees on November 9, 2020, when she was informed the likely cause of her bilateral knee condition was "overuse" and "aging."  However, the medical note from that date does not reflect that either Employee or the doctor attributed the "overuse" specifically to Employee's work duties, as the trial court's order infers.  Furthermore, Employee described her condition as a "flare up" at that appointment and gave no indication that she believed the increase in her symptoms to have caused permanent impairment.  Thus, we conclude the evidence preponderates against the court's finding that Employee knew or should have known on November 9, 2020 that she had a permanent physical impairment primarily caused by her employment.

Throughout November and early December 2020, Employee was consistently diagnosed with osteoarthritis at her various follow-up appointments.  It was not until December 14, when she received her MRI results, that the existence of a meniscal tear in the right knee was confirmed.  The record indicates Employee had experienced pain in her left knee for a long period of time, which had recently worsened, and she had only recently begun to have pain in her right knee.  We conclude that, under these circumstances, the evidence preponderates against the trial court's determination that Employee knew she had a permanent work-related aggravation of her pre-existing condition in the left knee and a permanent work-related injury in her right knee in November 2020.[6]

Subsection 201(b)(2) provides a second avenue by which an employee can provide timely notice in the context of a cumulative trauma injury.  Specifically, that subsection requires an injured worker to give notice when he or she knows or reasonably should know that cumulative trauma condition was caused by work activities *and* when he or she is rendered unable to perform normal work activities.  The trial court's order does not provide

---

[6] As we noted above, the record is silent as to the precise date Employee first believed her injuries to be work-related.  The first indication from an expert that her knee conditions were primarily work-related is Dr. Childress's April 2022 letter, written well after Employee provided written notice of her claim and filed a petition for benefit determination.  Although a doctor's diagnosis and/or opinion on causation is not required to trigger an employee's obligation to provide notice of a gradual injury, courts have regularly considered it as a factor.  *See, e.g.*, *Hill,* 2012 Tenn. LEXIS 306, at *9; *Roberts v. Marco Printing Co.*, No. M1998-00197-WC-R3-CV, 1999 Tenn. LEXIS 673, at *9 (Tenn. Workers' Comp. Panel Dec. 20, 1999); *Pentecost v. Anchor Wire Corp.*, 695 S.W.2d 183, 186 (Tenn. 1986).  Furthermore, we do not intend to suggest that an employee's obligation to provide notice is automatically tolled until he or she receives results of objective testing such as an MRI.  Instead, a court should consider the totality of the circumstances in determining when an employee knew or reasonably should have known he or she had suffered a gradual work-related injury resulting in permanent physical impairment.  In this case, however, we conclude the totality of the evidence does not indicate Employee knew or should have known she had suffered a permanent injury or permanent aggravation prior to the date she received her MRI results.

an analysis of when Employee was rendered unable to perform her normal work activities, and it does not address how or whether any such inability impacted the date on which she was required to provide notice.  However, because we conclude her notice was timely under subsection 50-6-201(b)(1), we need not address the second prong of section 50-6-201(b).

In short, we conclude that there is insufficient evidence in the record to establish that Employee either knew or reasonably should have known she had a work-related injury resulting in permanent impairment more than fifteen days prior to her December 18 written notice of injury.  The preponderance of the evidence supports Employee's assertion that she did not believe she had suffered any permanent injury until she reviewed the MRI results on December 14.  She provided written notice on December 18, which was within fifteen days.  Therefore, the evidence preponderates against the court's determination that Employee failed to give proper, timely notice of her alleged knee injuries.

## Conclusion

For the foregoing reasons, we reverse the trial court's order dismissing Employee's claim for insufficient notice.  Because the trial court made no alternative findings with respect to medical causation, we remand the case for the court to address all remaining issues in light of the evidence presented at the compensation hearing.  Costs on appeal are taxed to Employer.

11



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Shalanda White | )    Docket No. 2021-08-1065 |
| | ) |
| v. | )    State File No. 2571-2021 |
| | ) |
| Federal Express Corp., et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | )    Heard January 21, 2025 |
| Compensation Claims | )    in Jackson, TN |
| Shaterra R. Marion, Judge | ) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 6th day of March, 2025.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Christopher L. Taylor | | | | X | ctaylor@taylortoon.com |
| Stephen P. Miller | | | | X | smiller@mckuhn.com mdoherty@mckuhn.com |
| Shaterra R. Marion, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Matthew Keene
Acting Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-532-1564
Electronic Mail: WCAppeals.Clerk@tn.gov